# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONNIE LEE POSLOF, Jr. CDCR #BE-0659,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL MARTEL, et al.,<br><br>Defendants. | Case No.: 3:18-cv-00761-MMA-AGS<br><br>**ORDER:**<br><br>**1) GRANTING MOTIONS TO PROCEED IN FORMA PAUPERIS AND TO STRIKE ERROR**<br><br>**[Doc. Nos. 2, 14]**<br><br>**2) DENYING MOTION TO APPOINT COUNSEL**<br><br>**[Doc. No. 16]**<br><br>**AND**<br><br>**3) DISMISSING SECOND AMENDED COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § 1915A(b)** |

LONNIE LEE POSLOF, Jr. ("Plaintiff"), proceeding *pro se* and currently incarcerated at the California Health Care Facility ("CHCF") in Stockton, California, filed a Complaint pursuant to 42 U.S.C. § 1983 in the Eastern District of California on March

19, 2018, together with a Motion to Proceed In Forma Pauperis ("IFP"). (*See* Doc. Nos. 1, 2.)

## I. Procedural Background

Plaintiff's original Complaint named as Defendants Michael Martel, the Warden at CHCF, the California Department of Corrections and Rehabilitation ("CDCR") at Richard J. Donovan Correctional Facility ("RJD"), and Does 1-100, described only as "Medical Staff and State Employees" at RJD. (*Id.* at 1-2.) Plaintiff claimed that while he was incarcerated at RJD on or about December 9, 2017, the CDCR adopted an "underground regulation" regarding the integration of "GP" (general population) and "SNY" (special needs yard) inmates within its "EOP" (enhanced outpatient program). (*Id.* at 3.) Plaintiff claims that due to the nature of his commitment offense, he suffers "great danger" as a result of the change in policy, and as a result, he attempted suicide and was transferred from RJD to a mental health crisis bed at California State Prison – Lancaster ("LAC"), on or about January 15, 2018. (*Id.* at 4-5). At some point Plaintiff claims an unidentified prison psychologist at LAC approved his discharge back to RJD, even though he remained a suicide risk. (*Id.*)

On January 31, 2018, Plaintiff was transferred back to RJD, and placed in "medical TTA" (triage and treatment) to be "cleared and placed back to original housing." (*Id.* at 4.) Upon his arrival there, Plaintiff claims he told an unidentified RJD sergeant and nurse that he feared for his safety and stated, "I feel suicidal." (*Id.*) Plaintiff then claims someone told him to "Go ahead," and placed him in a holding cell, where he tried to strangle himself with his t-shirt. (*Id.*) Another unidentified C/O (correctional officer) "spotted [him]," saw he was "blue and non-responsive[,] then pepper-sprayed [him]." *Id.* Plaintiff next claims he was "placed in a holding cage" where his clothing was cut off, and he was left for four hours "without proper medical treatment." (*Id.*)

On April 19, 2018, United States Magistrate Judge Edmund F. Brennan reviewed Plaintiff's Complaint, and determined that while Defendants Martel and CDCR were alleged to reside in the Eastern District, none of Plaintiff's alleged claims arose there. (*See*

Doc. No. 7 at 2.) Therefore, Judge Brennan transferred the case to the Southern District of California, where RJD is located and where some of Plaintiff's claims arose pursuant to 28 U.S.C. § 1404(a). Judge Brennan did not rule on Plaintiff's pending Motion to Proceed IFP, or screen his Complaint as required by 28 U.S.C. § 1915(e)(2) or § 1915A before transfer. (*Id.*)

Two weeks later, on April 30, 2018, Plaintiff filed a First Amended Complaint (Doc. No. 10) in this Court, as was his right pursuant to Fed. R. Civ. P. 15(a). Soon after, he submitted a Second Amended Complaint ("SAC") (Doc. No. 12), which was accepted for filing and sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A as the now operative pleading in light of Plaintiff's *pro se* status, his still pending Motion to Proceed IFP (Doc. No. 2), and because no purported Defendant has yet to be served. *See McGrath v. Home Depot USA, Inc.*, 298 F.R.D. 601, 606 (S.D. Cal. 2014) ("Under FRCP 15(a), a party may amend its pleading once 'as a matter of course' within 21 days after serving the pleading; after the service of a responsive pleading; or after service of a motion under Rule 12(b), (e), or (f)." (quoting Fed. R. Civ. P. 15(a)(1)); *Pouncil v. Tilton*, 704 F.3d 568, 574 (9th Cir. 2012) (noting court's obligation to "construe *pro se* complaints liberally"); *Valadez-Lopez v. Chertoff,* 656 F.3d 851, 857 (9th Cir. 2011 ("[It is] 'well-established that an amended complaint supersedes the original, the latter being treated thereafter as non-existent.'") (internal quotation marks and citations omitted).

On May 30, 2018, Plaintiff also filed a Motion seeking to strike an "error" in his SAC as to a date he included in paragraph 33 of his SAC, (*see* Doc. No. 14 at 1), together with a Motion to Appoint Counsel (Doc. No. 16).

II. **Motion to Proceed IFP**

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of

$400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In response to a Clerk's Notice issued in the Eastern District of California prior to transfer, the CDCR filed an Inmate Statement Report in support of Plaintiff's IFP Motion. *See* Doc. Nos. 4, 5; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. This Report shows that while Plaintiff had just over $197 deposited to this account in September 2017, he had an available balance of zero as of December 21, 2017, and no

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

4

3:18-cv-00761-MMA-AGS

money on the books at the time of filing. *See* Doc. No. 5 at 1. Based on this accounting, no initial partial filing fee is assessed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered.").

Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (Doc No. 2), declines to exact any initial filing fee because his prison certificate indicates he has "no means to pay it," *Bruce*, 136 S. Ct. at 629, and directs the Secretary of the CDCR, or his designee, to instead collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1). *See id.*

### III. Motion to Strike Error

Plaintiff has also filed a Motion seeking to strike a date he included in paragraph 33 of his SAC. (*See* Doc. No. 14 at 1.) Specifically, Plaintiff asks the Court to omit the date of "4-30-2018" as incorrectly pleaded because "Defendant Miles was not present on that date," and he is "unable to prepare another amended complaint" correcting the error due to "limited resources" and placement in CHCF's psychiatric in-patient program. (*Id.* at 2.)

Generally, courts do not permit Plaintiffs to amend their complaints by interlineation, and instead require amendment so that a pleading is complete by itself. *See e.g.,* S.D. Cal. CivLR 15.1; *Flood v. Nat'l Football League*, No. CIV-S-08-0091 GEB-JFM-PS, 2008 WL 942664, at *1 (E.D. Cal. Apr. 1, 2008) (rejecting Plaintiff's attempts to "interlineate changes to the original complaint," and instead advising him to submit an amended complaint that was "complete in and of itsel[f]."). However, since Plaintiff has already amended his pleading twice, is proceeding without counsel, and asks that the Court strike just one irrelevant date from his SAC which does not otherwise affect his claims for

relief, his Motion is **GRANTED**. *See* Fed. R. Civ. P. 12(f) (court may strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter" "on its own motion" or "on motion made by a party before responding to the pleading."); *see also Thornton v. Solutionone Cleaning Concepts, Inc.*, No. CIV F 06–1455 AWI SMS, 2007 WL 210586, at *1 (E.D. Cal. Jan. 26, 2007) (a motion to strike "may be proper if it will make the trial less complicated or if allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration.").

## IV. Motion to Appoint Counsel

Plaintiff also requests that the Court appoint him counsel due to his indigence, lack of legal training, incarceration, and restrictions on his ability to "properly investigate and gather sufficient evidence to support the claims in [his] civil rights complaint." (*See* Doc. No. 16 at 1.)

All documents filed *pro se* are liberally construed, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotations omitted)). But there is no constitutional right to counsel in a civil case; and none of Plaintiff's pleadings to date demand that the Court exercise its limited discretion to request than an attorney represent him pro bono pursuant to 28 U.S.C. § 1915(e)(1) at this stage of the case. *See Lassiter v. Dept. of Social Servs.*, 452 U.S. 18, 25 (1981); *Agyeman v. Corr. Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004). Only "exceptional circumstances" support such a discretionary appointment. *Terrell v. Brewer*, 935 F.3d 1015, 1017 (9th Cir. 1991); *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). Exceptional circumstances exist where there is cumulative showing of both a likelihood of success on the merits and a demonstrated inability of *the pro se* litigant to articulate his claims in light of their legal complexity. *Id.*

As currently pleaded, Plaintiff's original, First Amended, and Second Amended Complaints demonstrate that while he may not be formally trained in law, he nevertheless is fully capable of legibly articulating the facts and circumstances relevant to his claims,

which are typical and not legally "complex." *Agyeman*, 390 F.3d at 1103. Moreover, for the reasons discussed below, Plaintiff has yet to show he is likely to succeed on the merits of the claims he alleges arose in the Southern District of California, and the remainder of his claims are improperly joined. *Id.*; 28 U.S.C. § 1406(a); *see also Cano v. Taylor*, 739 F.3d 1214, 1218 (9th Cir. 2014). Therefore, the Court **DENIES** Plaintiff's Motion for Appointment of Counsel (Doc. No. 16) without prejudice.

V. **Screening of SAC pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A**

   A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his SAC requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citations omitted.)

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B.    Plaintiff's Allegations

Plaintiff's SAC, like his original Complaint, renames as Defendants CHCF's Warden Martel, as well as "Does 1-100," who are now described to be unnamed "Correctional Officers, Sergeants, Medical Staff, employees, and agents of RJD *and* CHCF." (Doc. No. 12 at 1, 5 (emphasis added).) In addition, Plaintiff names RJD's Warden Daniel Paramo and RJD Correctional Lt. A. Canedo as parties. (*Id.* at 1-4.)

The remaining Defendants are Kathleen Allison, who is alleged to be the Director of the CDCR and the person who "issued [the] memorandum" in November 2017 re-designating SNY and GP prisoners "for housing" within the EOP, *see id.* at 2, 4, 5, Alka Aneja, the Medical Director and Chief of Psychiatry at CHCF, Sharon Zamora, the Executive Director at CHCF, T. Martello, a Psychiatrist at CHCF, K. Yarick, a Psychiatric Supervisor at CHCF, Miles, a Psychiatric Technician at CHCF, and Hollins, a Rehabilitation Therapist, also at CHCF. (*See id.* at 1-2, 4-5, 11.)

Plaintiff's SAC re-alleges violations of his Eighth Amendment rights regarding his transfer from LAC back to RJD on January 31, 2018, despite his suicidal ideations and safety concerns, his thwarted self-strangulation in RJD's TTA holding cage, and the delay in providing medical attention after he was pepper sprayed. (*Id.* at 5-9.) With respect to the incidents alleged to have occurred at RJD, Plaintiff claims that upon his arrival at RJD, he notified "R&R" (receiving and release) Sgt. Diaz[2] that "he has direct enemy concerns" and "could not return to C-yard." (*Id.* at 6.) Plaintiff claims Diaz "stated that Defendant Canedo

---

[2] Sgt. Diaz is not named as a Defendant.

told him not to complete [a] lockup order because their policy is to do so only when the inmate is assaulted by the enemies," and therefore, "he was going to be placed back onto C-yard" once he was "medically cleared." (*Id.* at 6-7.) Plaintiff claims he was then escorted to TTA for a medical assessment, where he spoke with a still unidentified RJD sergeant and nurse. (*Id.* at 7.) After Plaintiff threatened to kill himself if returned to C-yard, Plaintiff claims the sergeant said, "Go ahead." (*Id.*) When placed into a holding cell, Plaintiff "removed his shirt," "tied it tightly around his neck and began to strangulate himself." (*Id.*)

Plaintiff then contends that a still unidentified "correctional officer [who was] walking by" "noticed [him] turning blue," "opened the door and pepper sprayed [him] three times." (*Id.*) Plaintiff was then cuffed, escorted to a room where he was stripped of his clothes, and "seen by O. Umugbe, Ph.D via video phone conference," who "ordered that [he] be placed in a Mental Health Crisis Bed for self-harm and suicidal statements." (*Id.*)[3] Plaintiff also claims he was then escorted to a holding cage, where he was "left for four hours," and where he pleaded with unidentified "medical staff and correctional officers" to allow him to flush his eyes of the pepper spray, "but was told no." (*Id.* at 8.) Plaintiff was eventually "escorted to Ad-Seg for temporary housing pending transfer." (*Id.*)

Four months later, on April 30, 2018[4] and May 1, 2018, and after he was transferred from RJD to CHCF, Plaintiff also claims Defendant Miles sexually assaulted him while performing a routine pat-down search, Defendant Yarick failed to properly complete a PREA Report[5] afterward, and Defendants Martello, Yarick, Hollins, and Does 1-100

---

[3] Plaintiff does not name Dr. Umugbe as a Defendant either.

[4] Because the Court has already granted Plaintiff's Motion to strike this date from his SAC as included in error it will assume for purposes of screening that Plaintiff intends to allege he was assaulted by Defendant Miles only once – on May 1, 2018. (*See* Doc. No. 12 at 10.)

[5] The Prison Rape Elimination Act ("PREA") authorizes the reporting of incidents of rape and sexual abuse in prison, but it does not give rise to a private cause of action by a prisoner. *Davis v. Riverside Cty. Sheriff's Dep't*, 2016 WL 1642558, at *4 (C.D. Cal. Apr. 25, 2016)*; Porter v. Jennings*, 2012 WL 1434986, at *1 (E.D. Cal. Apr. 24, 2012); *Krieg v. Steele*, 599 F. App'x 231, 232 (5th Cir. 2015) (citing

9

3:18-cv-00761-MMA-AGS

"made a decision to down step [his] privileges" at CHCF after he "boarded up his cell windows" on May 4, 2018 in protest. (*Id.* at 10-11.) Plaintiff contends all the CHCF Defendants (Aneja, Zamora, Hollins, Yarick, Miles, Martello, and Does 1-100) failed to "reasonably protect [him] from sexual abuse from a medical staff [member]," "den[ied] his right[]" to file a PREA report, and then "further retaliate[d]" by "tak[ing] his privileges." (*Id.* at 11.)

Plaintiff contends all Defendants violated his Eighth Amendment rights, for which he seeks a "declaratory injunctive order" enjoining Defendant Allison from "implementation and enforcement of the underground regulation" that provides for "non-designation" within the EOP, as well as unspecified amounts of general and punitive damages. (*Id.* at 11-19.)

### C. RJD Claims and Defendants

In his first cause of action, Plaintiff claims RJD Warden Paramo and Does 1-100 violated his Eighth Amendment right to be free from cruel and unusual punishment by "fail[ing] to adequately supervise the correctional officers subordinate to them." (*Id.* at 14, ¶ 41.) In his second cause of action, Plaintiff claims Paramo (together with CHCF Warden Martel, CDCR Director Allison, and Does 1-100), violated his Eighth Amendment rights through the "implementation and enforcement of an underground regulation" that subjects him to a "pervasive risk of harm by taking his classification designation of SNY" and permitting his "housing him" with GP inmates. (*Id.* at 13 ¶ 49.) In his third cause of action, Plaintiff claims Paramo and Does 1-100 also violated the Eighth Amendment by "fail[ing] to adequately train custody and medical staff in the appropriate use of force," and by "fail[ing] to investigate the incident or discipline the other defendants." (*Id.* at 15 ¶ 60.)

Critically, Plaintiff does *not* mention RJD Lt. A. Canedo in any of these causes of action; nor does he name as parties the RJD sergeant or nurse who assessed him in the TTA

---

cases); *Bell v. County of Los Angeles*, 2008 WL 4375768, at *6 (C.D. Cal. Aug 25, 2008) (the Prison Rape Elimination Act "does not create a private right of action").

prior to his placement in the holding cell where he attempted to strangle himself on January 31, 2018, the RJD correctional officer whom he alleges employed pepper-spray on him, or the medical staff members or correctional officers who allegedly refused to permit him to flush his eyes afterward.

### 1. 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035-36 (9th Cir. 2015).

### 2. Individual Liability

With respect to the RJD Defendants and all claims alleged to arise at RJD, Plaintiff fails to state a plausible claim for relief under § 1983 because he fails to include "further factual enhancement" which describes how or when Warden Paramo or Lt. Canedo were personally involved in his medical assessment and housing clearance while he was in the TTA on January 31, 2018, the use of pepper spray to thwart his suicide attempt, to what extent either of their acts or omissions were the cause of his injury. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

There is no respondeat superior liability under 42 U.S.C. § 1983. *Palmer v. Sanderson*, 9 F.3d 1433, 1437-38 (9th Cir. 1993). "Because vicarious liability is inapplicable to . . . § 1983 suits, [Plaintiff] must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 at 676; *see also Jones v. Community Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least me degree of particularity overt acts which defendants engaged in" in order to state a claim).

As currently pleaded, Plaintiff's SAC offers no factual detail from which the Court might reasonably infer a plausible claim for relief based on a violation of any constitutional

right on the part of Warden Paramo, Lt. Canedo, or any Doe Defendant at RJD. Instead, Plaintiff simply identifies Paramo as RJD's Warden, and Canedo as a Correctional Lieutenant. *See* SAC, Doc. No. 12 at 2, 3-4. With respect to Paramo, Plaintiff claims he "was responsible for supervising, disciplining, and providing necessary training for all correctional officers and staff employed at RJD," which presumably includes some the 100 unnamed Doe Defendants. *Id.* at 3, 5. With respect to Canedo, Plaintiff alleges even less— that he was the Lieutenant on duty when Plaintiff attempted suicide in the TTA in an effort to avoid placement on the C-yard. *Id.* at 6. But Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 662 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 570). And a supervisory official may only be held liable under § 1983 if Plaintiff alleges his "personal involvement in the constitutional deprivation, or . . . a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018); *Starr v. Baca,* 652 F.3d 1202, 1207 (9th Cir. 2011).

Plaintiff makes no such allegations in his SAC. Therefore, the Court sua sponte dismisses Defendants Paramo, Canedo, and all the unnamed Doe "correctional officers, sergeants, medical staff, employees, and agents of RJD," *see* SAC Doc., No. 12 at 5, included as parties to this action based on Plaintiff's failure to state a plausible individual liability claim against any of them. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1); *Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

### 3. Eighth Amendment Claims

While Plaintiff has failed to allege personal liability on behalf *any* RJD Defendant, the Court further notes that to the extent Plaintiff will be granted leave to amend his RJD claims, he must also include sufficient factual matter to show how each individual person he seeks to sue imposed cruel and unusual punishment upon him during the January 31, 2018 incident.

Specifically, while the Eighth Amendment requires officials take reasonable measures to guarantee the safety and well-being of prisoners, *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994); *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000), to state an Eighth Amendment failure to protect claim Plaintiff must allege facts sufficient to plausibly show that (1) he faced conditions posing a "substantial risk of serious harm" to his health or safety, and (2) the individual prison official he seeks to hold liable was "deliberately indifferent" to those risks. *Farmer*, 511 U.S. at 837; *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). To demonstrate deliberate indifference, Plaintiff must allege facts sufficiently to plausibly show that each defendant both knew of and disregarded a substantial risk of serious harm to his health and safety. *Farmer*, 511 U.S. at 837. Thus, Plaintiff must allege the each person he seeks to sue was "both … aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [that] he ... also dr[e]w that inference." *Id.*

To the extent Plaintiff also seeks to challenge the amount of force used by the unidentified RJD Correctional Officer alleged to have pepper-sprayed him in order to thwart his suicide attempt on January 31, 2018, he must allege facts sufficient to show "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)); *see also Rodriguez v. Cty. of Los Angeles*, __ F.3d __, 2018 WL 2424581, at *11 (9th Cir. May 30, 2018) (No. 13-56292).

C. CHCF Claims and Defendants

Finally, in his fourth cause of action, Plaintiff claims CHCF Defendants Martel, Aneja, Martello, Yarick, Hollins, and Does 1-100 also violated his Eighth Amendment rights by "fail[ing] to adequate train the medical staff" at CHCF regarding "the appropriate method of reporting a PREA incident" and by "retaliat[ing] against [him] for filing [a] staff sexual misconduct report by taking all [his] privileges, rights, and benefits." (*See* SAC, Doc. No. 12 at 16-18, ¶¶ 70-72.) And while in the body of his SAC, Plaintiff claims

Defendant Miles "sexually assaulted" him on May 1, 2018, (*id.* at 10 ¶ 33), he fails to include any mention of Miles in any of his legal causes of action. (*Id.* at 11-18, ¶¶ 39-77.)

Nevertheless, the Court finds these claims, alleged to arise at CHCF where Plaintiff is currently incarcerated, four months *after* the January 31, 2018 RJD incident which originally formed the basis for this suit, and against a whole separate set of Defendants at another correctional institution, are not properly joined to this case.

The Federal Rules of Civil Procedure set forth the rules regarding joinder of parties or claims. "A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternate claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). "Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Palmer v. Woodford*, No. 1:06-CV-00512-LJO, 2011 WL 6294372, at *1-2 (E.D. Cal. Dec. 15, 2011). Moreover, claims may be brought against multiple defendants only if (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are common questions of law or fact. *See* Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997); *Desert Empire Bank v. Insurance Co. of North America*, 623 F.3d 1371, 1375 (9th Cir. 1980).

As currently pleaded, the CHCF claims Plaintiff attempts to raise for the first time in his SAC are not alleged in conformance with Federal Rules of Civil Procedure 18 and 20, and therefore should not proceed in a single action. *See e.g., Palmer*, 2011 WL 6294372, at *1-2; *Coughlin*, 130 F.3d at 1351. Plaintiff's CHCF claims do not arise out of the same transaction or occurrence as his RJD claims, involve a whole separate set of defendants, and do not present common questions of fact or law. *See* Fed. R. Civ. P. 20(a)(2).

Therefore, while the Court will permit Plaintiff to amend his claims arising at RJD on January 31, 2018, and against RJD officials in accordance with the pleading requirements explained above, *see Lopez*, 203 F.3d at 1130 ("Leave to amend should be granted 'if it appears at all possible that the plaintiff can correct the defect.'") (citation omitted), the remainder of his claims, alleged to have arisen at CHCF in Stockton, California, and included in the fourth cause of action of his SAC, are hereby dismissed without prejudice, but without leave to amend in *this* case, so that he may raise them in a new and separate civil action, filed in the proper venue. *See* 28 U.S.C. § 84(b) ("The Eastern District [of California] comprises the counties of … San Joaquin, …."); *see also* 28 U.S.C. § 1391(b)(1), (2).

**VI. Conclusion and Orders**

For all the reasons discussed, the Court:

1) **GRANTS** Plaintiff's Motion to Proceed IFP (Doc. No. 2);

2) **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by garnishing monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION;

3) **DIRECTS** the Clerk of the Court to serve a copy of this Order on Scott Kernan, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001;

4) **GRANTS** Plaintiff's Motion to Strike Error (Doc. No. 14);

5) **DENIES** Plaintiff's Motion to Appoint Counsel (Doc. No. 16);

6) **DISMISSES** Plaintiff's Second Amended Complaint (Doc. No. 12) based on his failure to state a claim upon which relief can be granted and pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1); and

7) **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in

which to file a Third Amended Complaint *which cures the deficiencies of pleading his RJD claims only*. Plaintiff's Third Amended Complaint must be captioned as his "Third Amended Complaint," include Civil Case No. 18-cv-00761-MMA-AGS in its caption, and be complete by itself without reference to any of his prior pleadings. Defendants not named and any claim not re-alleged in his Third Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file a Third Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on his failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

DATE: June 18, 2018

_____
HON. MICHAEL M. ANELLO
United States District Judge

16

3:18-cv-00761-MMA-AGS