# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONNIE LEE POSLOF, Jr., CDCR #BE-0659, <br><br> Plaintiff, <br><br> vs. <br><br> MICHAEL MARTEL, et al., <br><br> Defendants. | Case No.: 3:18-cv-00761-MMA-AGS <br><br> **ORDER:** <br><br> **1) DISMISSING CERTAIN DEFENDANTS AND CLAIMS** <br><br> **2) DENYING MOTION FOR TEMPORARY RESTRAINING ORDER [Doc. No. 20]** <br><br> **AND** <br><br> **3) DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF THIRD AMENDED COMPLAINT UPON REMAINING DEFENDANTS PURSUANT TO 28 U.S.C. § 1915(d) AND Fed. R. Civ. P. 4(c)(3)** |

Lonnie Lee Poslof, Jr. ("Plaintiff"), currently incarcerated at California State Prison, Sacramento ("SAC"), is proceeding pro se and in forma pauperis ("IFP") in this civil rights action first filed in the Eastern District of California and pursuant to 42 U.S.C. § 1983. *See* Doc. No. 1.

## I. Procedural Background

After the case was transferred to this District, *see* Doc. No. 7, Plaintiff amended his pleading twice, submitted a motion to strike portions of one of them, and filed a motion to appoint counsel. *See* Doc. Nos. 10, 12, 14, 16.

On June 18, 2018, this Court granted Plaintiff's motions to proceed IFP and to strike, but denied his motion to appoint counsel, and *sua sponte* dismissed his Second Amended Complaint in its entirety based on his failure to state a claim upon which relief can be granted pursuant to the mandatory screening required by 28 U.S.C. § 1915(e)(2) and § 1915A(b). *See* Doc. No. 17. Plaintiff was provided notice of his pleading deficiencies, and was granted leave to amend <u>only</u> as to those claims alleged to have occurred at Richard J. Donovan Correctional Facility ("RJD"). *Id.* at 11-16.

On June 29, 2018, Plaintiff filed a Third Amended Complaint ("TAC") alleging three Eighth Amendment causes of action against the following Defendants: Michael Martel, Warden of the California Health Care Facility ("CHCF"); Daniel Paramo, Warden of RJD; Kathleen Allison, a Director of the California Department of Corrections and Rehabilitation ("CDCR"); A. Canedo, RJD Correctional Lieutenant; Ricardo Torres, RJD Registered Nurse; Diaz, RJD Correctional Sergeant, O. Umugbe, RJD Psychiatrist; Dr. Keykhosrow Rastegari, Lancaster State Prison Psychologist, and Does 1-10, described only as RJD and CHCF Correctional Officers, medical staff, employees, and agents who "may have observed, participated in, or ha[ve] knowledge." *See* TAC, Doc. No. 18 at 1-5.[1]

On August 13, 2018, and while he was still incarcerated at CHCF,[2] Plaintiff also filed a document entitled "Order to Show Cause for a[] Preliminary Injunction and

---

[1] To the extent Plaintiff includes unknown CHCF or LAC officials as Does, the Court's June 18, 2018 Order precludes him from doing so. *See* Doc. No. 17 at 13-15; *infra* § II.C.

[2] Plaintiff subsequently filed a Notice of Change of Address on August 15, 2018 indicating his transfer to California State Prison, Sacramento. *See* Doc. No. 21.

Temporary Restraining Order ("TRO"), seeking to enjoin Defendants Martel, Paramo, Allison, and unidentified Does from "implementation and enforcement of the 'Non-Designated Enhanced Outpatient and Inpatient Initiative,'" a regulation Plaintiff claims violates his Eighth Amendment rights and puts him at risk of harm. *See* Doc. No. 20 at 1-2, 5-7.

## II. Screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A

### A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his TAC, like his previous pleadings, also requires a pre-answer screening which the Court conducts *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). As Plaintiff is now aware, under these statutes, the Court must dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B. Allegations in TAC

Plaintiff claims that on November 30, 2017, Defendant Allison, in her capacity as a Director of the CDCR, issued a memorandum entitled "Statewide Non-Designated Enhanced Outpatient Program and Inpatient Treatment Initiative" ("EOP Initiative"),[3] providing that CDCR and California Correctional Health Care Services ("CCHCS") would "no longer recognize the classification designations of Sensitive Needs Yard ("SNY") or General Population ("GP") for housing EOP (Enhanced Outpatient Program) and inpatient inmates." *See* TAC, Doc. No. 18 at 5, *see also* Ex. 1-A at 22, 24. Plaintiff claims Allison, Wardens Martel and Paramo, and unidentified Does 1-10 "are responsible for enforcing this regulation knowing that [it] will put [him] in immediate danger due to the fact that his commitment offense is sensitive in nature." *See* TAC, Doc. No. 18 at 5. Plaintiff claims the EOP Initiative's attempts to integrate SNY and GP inmates will "definitely put [him] in a potential life threatening situation." *Id.* at 6.

On January 24, 2018, Plaintiff was admitted to a Mental Health Crisis Bed at California State Prison in Lancaster ("LAC") for "psychiatric treatment of suicidal ideations and self-harm." *Id.* at 7. Plaintiff contends he "specifically" told Defendant Rastegari, a LAC psychiatrist, that the EOP Initiative "would potentially put his life in

---

[3] EOP is the abbreviation for Enhanced Outpatient Program, which is a prison mental health care program designation. CAL. CODE REGS., tit. 15, § 3040.1(d); *Coleman v. Brown*, 28 F. Supp. 3d 1068, 1075 (E.D. Cal. 2014).

4

danger if he were to return to RJD or any non-designated yard," and that he "would or have plans to commit suicide sue to his safety concerns." *Id.* Plaintiff claims Dr. Rastegari discharged him on January 31, 2018, "without making a thorough assessment of [his] emotional state" or an "evaluation of his suicide risk," and said there was "nothing they would do for him and if [he] really had enemy concerns," he should "notify the R&R Sergeant (Defendant Diaz) when [he] returns to RJD." *Id.*

Plaintiff was transferred to RJD on the same day, spoke to Diaz upon arrival, and "specifically told him that he had direct enemy concerns," and "could not return to C-Yard." *Id.* Plaintiff claims Diaz "called Defendant Canedo and notified him of Plaintiff's concerns," but Canedo denied his request to authorize a "confidential lock-up order and place him in administrative segregation" on grounds that "the policy was to do so only when or if the inmate has been assaulted prior." *Id.*

Because Plaintiff had just "returned from a Mental Health Crisis Unit," he claims he was then escorted to "TTA"[4] for a "medical assessment" by Defendant Torres, a Registered Nurse. *Id.* at 8. Plaintiff claims he also told Torres and an unidentified TTA Sergeant about "his direct enemy concerns and how his life would be in danger," and that he "could not return to C-Yard." *Id.* Plaintiff claims RN Torres and the TTA Sergeant "acknowledged" his concerns, but told him to "take [them] to the yard sergeant." *Id.*

Plaintiff then told Torres and the TTA Sergeant "he felt suicidal and if he were to return to C-Yard he would kill himself." *Id.* Plaintiff contends the TTA Sergeant replied, "OK, go ahead," and "placed [him] in a holding cell instead [of] handcuffing him and putting him in a holding cage[,]" in order to "prevent [him] from harming himself." *Id.* While in the cell, Plaintiff claims he "removed his t-shirt[,] … tied it around his neck," and attempted to strangle himself. *Id.* After an unidentified female correctional officer noticed that he "had turned blue," she "opened the door and pepper-sprayed [him] instead

---

[4] "TTA" is an acronym for the prison "Triage and Treatment Area," which is "similar to an emergency room." *See Babela v. Elmi*, No. 17-CV-01939-PJH, 2018 WL 1900092, at *3 (N.D. Cal. Apr. 20, 2018).

of ordering [him] to remove [the] shirt or calling for medical assistance." *Id.*

Plaintiff claims her was cuffed and escorted to another room, where Torres cut his clothes off, but refused to decontaminate him, and the unidentified TTA Sergeant "told all correctional officers to not allow Plaintiff to flush his eyes and body of the pepper spray." *Id.* at 9.[5]

Plaintiff then claims to have been escorted to yet another room where he was interviewed by Defendant Umugbe, for a "suicide risk and self-harm evaluation." *Id.* Plaintiff claims Dr. Umugbe observed he was suffering from the pepper spray, but did not question Torres before placing Plaintiff "into a mental health crisis bed for self-harm and suicidal statements." *Id.* Plaintiff claims it was not until he was later "escorted to Ad-Seg for temporary housing pending transfer" that he was given "access to water" and was able to "wash[] his eyes of the pepper spray." *Id.* at 9-10. Plaintiff claims to have later been transferred to CHCF, where he was prescribed eyeglasses due to the damage caused by his "lack of medical treatment after being pepper sprayed" at RJD. *Id.* at 10.

### C. Previously-named Defendants

In his original, First, and Second Amended Complaints, Plaintiff included the following additional defendants: CDCR, Richard J. Donovan State Prison; Alka Aneja; Sharon Zamora, Exec. Dir. CHCF; K. Yarick, T. Martello, and Miles, all Psychiatric Technicians; and Hollins, Rehabilitation Therapist. *See* Doc. Nos. 1, 10, 12. However, the Court's June 18, 2018 Order dismissed all claims alleged to have arisen at CHCF, granted Plaintiff leave to amend only as to claims arising at RJD, and cautioned that any defendant or claim not re-alleged in his TAC would be considered waived. *See* Doc. No. 17 at 15-16.

None of these previously included persons or entities are re-named as Defendants in his TAC, and no constitutional claims are alleged against these purported parties. *See*

---

[5] Plaintiff also contends that "due to the fact [he] was in extreme pain," he "obviously could not see anyone's face," and "was unable to see their name tags." *Id.*

Doc. No. 18 at 1-5; S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

Therefore, the Court finds Plaintiff's TAC fails to state a claim as to these Defendants and will direct the Clerk of Court to terminate them as parties to this matter pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

D. Warden Martel

Despite the Court's June 18, 2018 *sua sponte* dismissal of Plaintiff's CHCF claims, he continues to include CHCF's Warden Martel as a Defendant in his TAC, based on allegations that Martel "enforce[ed]" the EOP Initiative while Plaintiff was incarcerated there, and is "responsible for supervising, disciplining, [and] providing necessary training for all correctional officers and staff employed at CHCF." *See* TAC, Doc. No. 18 at 3. Regardless of this pleading insufficiency, *see Iqbal*, 556 U.S. at 676 ("[V]icarious liability is inapplicable to *Bivens* and § 1983 suits...."), all claims Plaintiff previously alleged to have occurred at CHCF have already been dismissed pursuant to Fed. R. Civ. P. 18 and 20(a)(2) and without leave to amend in this case, *see* Doc. No. 17 at 13-15, and none of the incidents giving rise to the Eighth Amendment claims re-alleged in Plaintiff's TAC occurred at CHCF.

Therefore, the Court also finds Plaintiff's TAC fails to state a claim as to Warden Martel and will direct the Clerk of Court to terminate him as a party to this matter pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

E. Eighth Amendment Claims

With respect to the Eighth Amendment claims alleged against Defendants Allison, Paramo, Rastegari, Diaz, Canedo, Torres, Umugbe, and Does 1-10, and related to the application of the EOP Initiative as to Plaintiff's transfer to and treatment at RJD beginning on or about January 31, 2018, however, the Court finds his allegations

7

sufficient to sufficient to survive the "low threshold" set for *sua sponte* screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *United States v. Williams*, 842 F.3d 1143, 1153 (9th Cir. 2016) (the Eighth Amendment "requires that prison officials 'must take reasonable measures to guarantee the safety of the inmates.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 833, 847 (1994) ("[P]rison officials have a duty [under the Eighth Amendment] ... to protect prisoners ...." and therefore, "may be held liable … if [they] know[] that inmates face a substantial risk of serious harm and disregard[] that risk by failing to take reasonable measures to abate it."); *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) ("[A] prison official can violate a prisoner's Eighth Amendment rights by failing to intervene."); *Hudson v. McMillian*, 503 U.S. 1, 5, (1992) (unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment); *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (for claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.") (citing *Hudson*, 503 U.S. at 7); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (prison officials' deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment); *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (analyzing prison officials' use of pepper spray and failure to properly decontaminate inmates under both Eighth Amendment excessive force and deliberate indifference standards); *see also Pulido v. Lunes*, No. 1:14-CV-01174-DAD-EPG, 2016 WL 336182, at *8 (E.D. Cal. Jan. 28, 2016) (finding prisoner's allegations of having attempted suicide as a proximate result of Defendants' alleged failure to protect him from extortion and attack at the hand of gang members sufficient to state an Eighth Amendment claim), *report and recommendation adopted*, No. 1:14-CV-01174-DAD-EPG-PC, 2016 WL 1224028 (E.D. Cal. Mar. 29, 2016).

///

///

Therefore, the Court will direct the U.S. Marshal to effect service of summons Plaintiff's Complaint on these *named* Defendants on his behalf.[6] *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal ... if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").

### III. Motion for TRO and Preliminary Injunction

Finally, Plaintiff has also filed a Motion requesting a TRO and preliminary injunction preventing the "implementation and enforcement" of the EOP Initiative because he is a "classified protective custody inmate due to case factors relating to [his] conviction," and housing "with any [GP] inmate" "put[s] [him] in a life[-]threatening situation." *See* Doc. No. 20 at 3-4.

#### A. Standard of Review

Procedurally, a federal district court may issue emergency injunctive relief only if it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required to take action in that

---

[6] Plaintiff also includes Does 1-10 as Defendants in his TAC, and claims they include RJD officials who "may have observed, [or] participated in," the incidents giving rise to his claims. *See* Doc. No. 18 at 5. However, he will first need to identify these officials, and substitute their true names before the United States Marshal will be ordered and/or able to execute service upon them. *See Aviles v. Village of Bedford Park*, 160 F.R.D. 565, 567 (1995) (Doe defendants must be identified and served within [90] days of the commencement of the action against them); Fed. R. Civ. P. 15(c)(1)(C) & 4(m). Generally, Doe pleading is disfavored, *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980), and in most instances it is impossible for the United States Marshal to serve a party identified only as a Doe. *See Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994) (in order to properly effect service under Rule 4 in an IFP case, the plaintiff is required to "furnish the information necessary to identify the defendant."). However, the Court will not dismiss Does 1-10 as Defendants at this time because where the identity of an alleged party is not known prior to filing of an action, Ninth Circuit authority permits Plaintiff the opportunity to pursue appropriate discovery to identify the unknown Does, unless it is clear that discovery would not uncover their identity, or his pleading requires dismissal for other reasons. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie*, 629 F.2d at 642).

capacity, only upon service of summons or other authority-asserting measure stating the time within which the party served must appear to defend."). The court may not attempt to determine the rights of persons not before it. *See, e.g., Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 234-35 (1916); *Zepeda v. INS*, 753 F.2d 719, 727-28 (9th Cir. 1983); *Lathrop v. Unidentified, Wrecked & Abandoned Vessel*, 817 F. Supp. 953, 961 (M.D. Fl. 1993); *Kandlbinder v. Reagan*, 713 F. Supp. 337, 339 (W.D. Mo. 1989); *Suster v. Marshall*, 952 F. Supp. 693, 701 (N.D. Ohio 1996); *see also Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (injunctive relief must be "narrowly tailored to give only the relief to which plaintiffs are entitled"). Under Federal Rule of Civil Procedure 65(d)(2) an injunction binds only "the parties to the action," their "officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation." Fed. R. Civ. P. 65(d)(2)(A)-(C).

Substantively, "[a] preliminary injunction is an extraordinary remedy never awarded as of right, and the grant of a preliminary injunction is a matter committed to the discretion of the trial judge[.]" *Epona v. Cty. of Ventura*, 876 F.3d 1214, 1227 (9th Cir. 2017) (internal quotation marks and citations omitted). "'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, __ U.S. __, 135 S. Ct. 2726, 2736-37 (2015) (*quoting Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). "Under *Winter*, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011).

In addition, the PLRA requires prisoners to satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires

>               preliminary relief, and be the least intrusive means necessary to
>               correct that harm. The court shall give substantial weight to any
>               adverse impact on public safety or the operation of a criminal
>               justice system caused by the preliminary relief and shall respect
>               the principles of comity set out in paragraph (1)(B) in tailoring
>               any preliminary relief.

18 U.S.C. § 3626(a)(2).

Section 3626(a)(2) places significant limits upon a court's power to grant preliminary injunctive relief to inmates, and "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of the State of California*, 220 F.3d 987, 998-99 (9th Cir. 2000).

### B. Application to Plaintiff's Case

First, the Court notes Plaintiff's case is still in its preliminary screening stage, the United States Marshal has yet to effect service on his behalf, and Defendants have no actual notice. Therefore, the Court has no personal jurisdiction over any Defendant at this time. *See* Fed. R. Civ. P. 65(d)(2); *Murphy Bros., Inc.*, 526 U.S. at 350; *Zepeda*, 753 F.2d at 727-28.

Second, Plaintiff's transfer from RJD to SAC moots his claims for injunctive relief with respect to the RJD Defendants and the enforcement of RJD policy. *See Andrews v. Cervantes*, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007) (prisoner's claims for injunctive relief generally become moot upon transfer) (citing *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (holding claims for injunctive relief "relating to [a prison's] policies are moot" when the prisoner has been moved and "he has demonstrated no reasonable expectation of returning to [the prison].")).

Third, even if the Court had personal jurisdiction over Defendant Allison, who is alleged to have adopted the EOP Initiative in her official capacity as a Director and on behalf of the CDCR "statewide," *see* Doc. No. 20 at 5, Plaintiff has failed to establish the

11

3:18-cv-00761-MMA-AGS

imminent irreparable harm required to support a preliminary injunction. *See Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d at 1131. "The fact that plaintiff has met the pleading requirements allowing him to proceed with the complaint does not, *ipso facto*, entitle him to a preliminary injunction." *Claiborne v. Blauser*, No. CIV S-10-2427 LKK, 2011 WL 3875892, at *8 (E.D. Cal. Aug. 31, 2011), *report and recommendation adopted*, No. CIV S-10-2427 LKK, 2011 WL 4765000 (E.D. Cal. Sept. 29, 2011). Instead, to meet the "irreparable harm" requirement, Plaintiff must do more than plausibly *allege* imminent harm; he must demonstrate it. *Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). This requires Plaintiff to demonstrate by specific facts that there is a credible threat of immediate and irreparable harm. *See* Fed. R. Civ. P. 65(b). "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Id.* at 674-75.

Here, Plaintiff claims the EOP Initiative "has been causing difficulties for [him] to program, receive adequate mental health care, etc. due to the fact that [he] is constantly concerned for [his] own safety," *see* Doc. No. 20 at 3, and he broadly contends the EOP Initiative fails to "afford[] [him] the appropriate classification process … needed … to secure [his] safety" "due to case factors relating to [his] conviction." *Id.* at 4, 5. Without immediate injunctive relief, Plaintiff argues, he will "be at risk of being attacked" if he is "housed with any general population inmate[s]." *Id.* at 4.

But these allegations of potential harm and risk of injury are merely speculative, *see Caribbean Marine*, 844 F.2d at 674-75, and while Plaintiff may fear for his future safety as a result of the EOP Initiative, he has failed to *establish* that he faces the immediate and credible threat of irreparable harm necessary to justify injunctive relief at this stage of the case. *Lyons*, 461 U.S. at 102; *Goldie's Bookstore, Inc. v. Superior Court of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984) ("Speculative injury does not constitute irreparable injury."). *Rigsby v. State*, No. CV 11-1696-PHX-DGC, 2013 WL 1283778, at *5 (D. Ariz. Mar. 28, 2013) (denying prisoner's TRO based on fear of potential future injury based on past assaults); *Chappell v. Stankorb*, No. 1:11-CV-01425-

12

| | |
|---|---|
| 1 | LJO, 2012 WL 1413889, at *2 (E.D. Cal. Apr. 23, 2012) (denying injunctive relief where |
| 2 | prisoner's claims of injury based on current or future housing decisions were nothing |
| 3 | "more than speculative."), *report and recommendation adopted*, No. 1:11-CV-01425- |
| 4 | LJO, 2012 WL 2839816 (E.D. Cal. July 9, 2012). A presently existing actual threat must |
| 5 | be shown, even though injury need not be certain to occur. *See Zenith Radio Corp. v.* |
| 6 | *Hazeltine Research, Inc.*, 395 U.S. 100, 130-31 (1969); *FDIC v. Garner*, 125 F.3d 1272, |
| 7 | 1279-80 (9th Cir. 1997); *Caribbean Marine*, 844 F.2d at 674. |

Thus, for all these reasons, the Court denies Plaintiff's request for injunctive relief.

## IV. Conclusion and Orders

Based on the foregoing, the Court hereby:

1. **DISMISSES** Defendants Martel, CDCR, Aneja, Zamora, Yarick, Martello, Miles, and Hollins based on Plaintiff's failure to state a claim against them pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b) and/or for lack of proper joinder pursuant to Fed. R. Civ. P. 18(a) and 20(a) and **DIRECTS** the Clerk of the Court to terminate them as parties to this case.

2. **DENIES** Plaintiff's Motion for TRO and or Preliminary Injunction pursuant to Fed. R. Civ. P. 65 (Doc. No. 20).

3. **DIRECTS** the Clerk to issue a summons as to Plaintiff's Third Amended Complaint (Doc. No. 18) upon Defendants PARAMO, ALLISON, CANEDO, TORRES, UMUGBE, RASTEGARI, and DIAZ and forward it to Plaintiff along with a blank U.S. Marshal Form 285 for each of these Defendants. In addition, the Clerk will provide Plaintiff with a certified copy of this Order, a certified copy of the Court's June 18, 2018 Order Granting IFP (Doc. No. 17), his Third Amended Complaint (Doc. No. 18), and the summons so that he may serve them upon each of the named Defendants. Upon receipt of this "IFP Package," Plaintiff must complete the Form 285s as completely and accurately as possible, *include an address where each named Defendant may be served*, *see* S.D. Cal. CivLR 4.1.c, and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

4. **ORDERS** the U.S. Marshal to serve a copy of the Third Amended Complaint and summons upon the named Defendants as directed by Plaintiff on the USM Form 285s provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

5. **ORDERS** Defendants, once served, to reply to Plaintiff's Third Amended Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond).

6. **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants, or, if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been was served on Defendants or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk, or which fails to include a Certificate of Service upon the Defendants, may be disregarded.

**IT IS SO ORDERED**.

DATE: September 19, 2018

*[signature]*

HON. MICHAEL M. ANELLO
United States District Judge