UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

LONNIE LEE POSLOF, Jr.,
CDCR #BE-0659,

Plaintiff,

vs.

MICHAEL MARTEL, et al.,

Defendants.

Case No.: 3:18-cv-761-MMA-AGS

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**

[Doc. Nos. 24, 31]

Plaintiff Lonnie Lee Poslof, Jr., a California prisoner proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth Amendment rights by various medical professionals and correctional officials. *See* Doc. No. 18. Defendants Allison, Paramo, Diaz, Canedo, Rastegari, Torres, and Umugbe move to dismiss certain claims. *See* Doc. Nos. 24, 31. Plaintiff responded, Defendants replied, and the Court granted Plaintiff leave to file a sur-reply. *See* Doc. Nos. 25, 28, 36, 40, 42. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motions to dismiss.

## BACKGROUND[1]

This action arises out of events occurring as a result of Plaintiff's fear of being placed on a non-designated yard with General Population ("GP") inmates and his resulting suicide attempt.

On November 30, 2017, Defendant Allison, in her capacity as a Director of the California Department of Corrections and Rehabilitation ("CDCR"), issued a memorandum entitled "Statewide Non-Designated Enhanced Outpatient Program and Inpatient Treatment Initiative" ("EOP Initiative"),[2] providing that CDCR and California Correctional Health Care Services ("CCHCS") would "no longer recognize the classification designations of Sensitive Needs Yard ("SNY") or General Population ("GP") for housing EOP and inpatient inmates." Doc. No. 18 at 5; *see id.* at 22, 24.[3] Plaintiff claims Allison and Defendant Paramo, in his capacity as Warden at R.J. Donovan Correctional Facility ("RJD"), "are responsible for enforcing this regulation knowing that [it] will put [him] in immediate danger due to the fact that his commitment offense is sensitive in nature." *Id*. at 5.

On January 24, 2018, Plaintiff was admitted to a Mental Health Crisis Bed at California State Prison in Lancaster for "psychiatric treatment of suicidal ideations and self-harm" arising out of his fear that the EOP Initiative "would potentially put his life in danger if he were to return to RJD or any non-designated yard." *Id.* at 7. Plaintiff received treatment from Defendant Rastegari, who Plaintiff claims discharged him on January 31, 2018 "without making a thorough assessment of [his] emotional state" or an

---

[1] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the complaint. *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

[2] EOP is the abbreviation for Enhanced Outpatient Program, which is a prison mental health care program designation. *See* CAL. CODE REGS., tit. 15, § 3040.1(d); *Coleman v. Brown*, 28 F. Supp. 3d 1068, 1075 (E.D. Cal. 2014).

[3] Citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

"evaluation of his suicide risk." *Id.* According to Plaintiff, Rastegari advised him there was "nothing they would do for him and if [he] really had enemy concerns," he should "notify the R&R Sergeant (Defendant Diaz) when [he] returns to RJD." *Id.*

Plaintiff was transferred to RJD on the same day, spoke to Defendant Diaz upon arrival, and "specifically told him that he had direct enemy concerns," and "could not return to C-Yard." *Id.* Plaintiff claims Diaz "called Defendant Canedo and notified him of Plaintiff's concerns," but Canedo denied his request to authorize a "confidential lock-up order and place him in administrative segregation" on grounds that "the policy was to do so only when or if the inmate has been assaulted prior." *Id.*

Because Plaintiff had just "returned from a Mental Health Crisis Unit," he was escorted to "TTA"[4] for a "medical assessment" by Defendant Torres, a Registered Nurse. *Id.* at 8. Plaintiff claims he told Torres and an unidentified TTA Sergeant about "his direct enemy concerns and how his life would be in danger," and that he "could not return to C-Yard." *Id.* Plaintiff claims RN Torres and the TTA Sergeant acknowledged his concerns but told him to "take [them] to the yard sergeant." *Id.* Plaintiff told Torres and the TTA Sergeant "he felt suicidal and if he were to return to C-Yard he would kill himself." *Id.* Plaintiff contends the TTA Sergeant replied, "OK, go ahead," and "placed [him] in a holding cell instead [of] handcuffing him and putting him in a holding cage[,]" in order to "prevent [him] from harming himself." *Id.* While in the cell, Plaintiff claims he "removed his t-shirt[,] … tied it around his neck," and attempted to strangle himself. *Id.* After an unidentified female correctional officer noticed that he "had turned blue," she "opened the door and pepper-sprayed [him] instead of ordering [him] to remove [the] shirt or calling for medical assistance." *Id.*

Plaintiff claims he was cuffed and escorted to another room, where Defendant Torres cut his clothes off, but refused to decontaminate him, and the unidentified TTA

[4] "TTA" is an acronym for the prison "Triage and Treatment Area," which is "similar to an emergency room." *See Babela v. Elmi*, No. 17-CV-01939-PJH, 2018 WL 1900092, at *3 (N.D. Cal. Apr. 20, 2018).

Sergeant "told all correctional officers to not allow Plaintiff to flush his eyes and body of the pepper spray." *Id.* at 9. Plaintiff then claims to have been escorted to yet another room where he was interviewed by Defendant Umugbe, for a "suicide risk and self-harm evaluation." *Id.* Plaintiff claims Dr. Umugbe observed he was suffering from the pepper spray before placing Plaintiff "into a mental health crisis bed for self-harm and suicidal statements." *Id.* Plaintiff alleges that he spent four hours in a holding cage and officers, including Defendant Torres, repeatedly refused his requests for decontamination. Plaintiff claims it was not until he was later "escorted to Ad-Seg for temporary housing pending transfer" that he was given "access to water" and was able to "wash[] his eyes of the pepper spray." *Id.* at 9-10. Plaintiff claims to have suffered permanent damage to his eyes caused by the prolonged exposure to pepper spray.

Plaintiff brings Eighth Amendment claims against Defendants Allison, Paramo, Rastegari, Diaz, Canedo, Torres, and Umugbe. Plaintiff's factual allegations set forth a failure-to-protect claim against Defendants Allison and Paramo based on their implementation of the EOP Initiative; a failure-to-protect claim against Defendants Diaz and Canedo based on their failure to house Plaintiff in administrative segregation upon his arrival at RJD; a failure-to-protect claim against Defendants Rastegari, Diaz, Canedo, Torres, and Umugbe based upon their failure to implement or follow the appropriate protocol for suicide prevention; an excessive force claim based on the pepper spray incident; an inadequate medical care claim against Defendants Rastegari and Umugbe based on their failure to provide adequate psychiatric care; and an inadequate medical care claim against Defendants Torres and Umugbe based on their denial of medical treatment for his eyes subsequent to the application of pepper spray.

Defendants Allison, Paramo, Rastegari, Diaz, Canedo, and Torres move to dismiss Plaintiff's failure-to-protect claims.[5] Defendants Paramo, Diaz, Canedo, and Torres (collectively, the "RJD Defendants") move to dismiss Plaintiff's excessive force claim. Defendant Umugbe moves to dismiss Plaintiff's inadequate medical care claims against him. Plaintiff opposes Defendants' motions.[6]

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.

---

[5] Defendants Rastegari and Torres do not move to dismiss Plaintiff's inadequate medical care claims against them. Rather, Defendants argue that this action should proceed only as to Plaintiff's medical care claims.

[6] Plaintiff also moves to compel responses to various discovery requests. Defendants oppose Plaintiff's motion to compel as premature and procedurally inappropriate. The Court agrees and therefore **DENIES** Plaintiff's motion without prejudice. *See* Fed. R. Civ. P. 26(d).

1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

*Pro se* litigants "must be ensured meaningful access to the courts." *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc). When the plaintiff is appearing *pro se*, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *See Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2001); *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988). In giving liberal interpretation to a *pro se* complaint, however, the court is not permitted to "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). The court must give a *pro se* litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted) (citing *Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir. 1987)).

## DISCUSSION

### 1. *Excessive Force*

Plaintiff alleges that the use of pepper spray to extract him from the holding cell subsequent to his suicide attempt constituted excessive force. Although it is not entirely clear, Plaintiff appears to bring this claim against all of the RJD Defendants. Defendants move to dismiss the claim on the ground that none of the named defendants physically wielded the pepper spray.

The use of excessive force by a prison official violates the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). However, the use of force does not run afoul of the constitution "if it is applied in a good faith effort to restore discipline and order." *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002). "[A] prison official can violate a prisoner's Eighth Amendment rights by failing to intervene." *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (citing *Del Raine v. Williford*, 32 F.3d

1024, 1038 (7th Cir. 1994) ("A failure of prison officials to act in such circumstances suggests that the officials actually wanted the prisoner to suffer the harm.")). If prison officials had an opportunity to intervene and prevent or curtail the alleged constitutional violation, but failed to do so, they can be held liable for that violation. *Robins*, 60 F.3d at 1442.

Plaintiff's Third Amended Complaint does not contain factual allegations sufficient to set forth an excessive force claim against any of the named defendants. Plaintiff's allegations do not establish that any of the named defendants observed, assisted with, or otherwise participated in the unknown correctional officer's application of pepper spray. *See Iqbal*, 566 U.S. at 678. Plaintiff does not allege that Defendant Diaz had any involvement. Plaintiff's complaint against Defendants Torres and Umugbe arises out of their alleged failure to provide adequate medical care subsequent to the event, for which Plaintiff brings a separate Eighth Amendment claim. And Plaintiff's conclusory assertion that supervisory Defendants Paramo and Canedo failed to properly train staff regarding the use of pepper spray does not support a cognizable claim for relief. *See Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013); *Marsh v. County of San Diego*, 680 F.3d 1148, 1159 (9th Cir. 2012) (allegations of an isolated instance of a constitutional violation are insufficient to support a "failure to train" theory). Accordingly, Plaintiff's excessive force claim against these defendants is subject to dismissal with prejudice.

***2. Failure-To-Protect***

Plaintiff brings multiple claims against Defendants based on their purported failure to protect Plaintiff from harm at the hands of other inmates as well as his own. "The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." *Labatad v. Corr. Corp. of Am.*, 714

F.3d 1155, 1160 (9th Cir. 2013) (citing *Farmer*, 511 U.S. at 832-33; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, i.e., "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and (2) the official is, subjectively, deliberately indifferent to the substantial risk of serious harm. *Farmer*, 511 U.S. at 834.

a) <u>EOP Initiative</u>

Plaintiff's allegations suggest that he is in the Enhanced Outpatient Program for mentally ill inmates and has been housed on a sensitive needs yard ("SNY"). Plaintiff alleges that CDCR has a new policy to house EOP/SNY inmates with the general population of inmates, placing him at risk of physical harm due to the nature of his underlying criminal conviction. Plaintiff alleges a failure-to-protect claim against Defendants Allison and Paramo based on their implementation of the EOP Initiative and the threat it poses to Plaintiff's personal safety.

Defendant Allison is the Undersecretary of the CDCR. Defendant Paramo is the Warden of RJD. Plaintiff does not allege that either defendant directly participated in violating his constitutional rights. Rather, Plaintiff's allegations are premised on Allison and Paramo's supervisory authority. Under Section 1983, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of a constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir.1987)). The Ninth Circuit has explained that "[a]dvancing a policy that requires subordinates to commit constitutional violations is always enough for § 1983 liability, no matter what the required mental state, so long as the policy proximately causes the harm—that is, so long as the plaintiff's constitutional injury in fact occurs pursuant to the policy." *OSU Student All. v. Ray*, 699 F.3d 1053, 1076 (9th Cir. 2012).

Here, Plaintiff identifies the policy which he believes to be unconstitutional – the EOP Initiative – but he fails to allege any facts to demonstrate that the policy has resulted in a violation of his Eighth Amendment rights. In other words, Plaintiff does not allege that he was or has been housed with the general inmate population, or that he has otherwise been subjected to an actual, non-speculative risk of harm due to Defendant Allison's implementation of the policy. Plaintiff does not allege that Defendant Paramo's purported implementation of the EOP Initiative resulted in Plaintiff being housed with the general inmate population during his time at RJD. Plaintiff fails to state a plausible failure-to-protect claim against either defendant.

Furthermore, to the extent Plaintiff seeks prospective injunctive relief, his claim against Defendant Paramo is moot because he is no longer housed at RJD and his claim against Defendant Allison is barred by the pending class action, *Coleman v. Brown*. The class in *Coleman* currently consists of "all inmates with serious mental disorders who are now, or will in the future, be confined within the California Department of Corrections." *Coleman v. Brown*, 2013 U.S. Dist. LEXIS 169040, at *21-22 n.2 (E.D. Cal. Nov. 12, 2013). Plaintiff self-identifies as a member of the *Coleman* class. "Individual suits for injunctive and equitable relief from alleged unconstitutional prison conditions that are the subject of an existing class action 'must be made through the class representative until the class action is over or the consent decree is modified.'" *Valdez v. Forte*, 2010 U.S. Dist. LEXIS 128128, 2010 WL 4861459, at *2 (E.D. Cal. Nov. 22, 2010) (citing *McNeil v. Guthrie*, 945 F.2d 1163, 1166 (10th Cir. 1991)). Thus, even if Plaintiff could state a plausible failure-to-protect claim against Defendant Allison, he may not maintain his claim for prospective injunctive relief seeking to prohibit the implementation of the EOP Initiative in this action. Rather, he must seek relief as a member of the class in *Coleman*.

b) Administrative Segregation

Plaintiff alleges a failure-to-protect claim against Defendants Diaz and Canedo based on their refusal to house him in administrative segregation upon his arrival at RJD.

Plaintiff claims he advised Diaz and Canedo that he had enemies on C-yard, but they ignored his concerns and designated him for housing on C-yard anyway.[7]

To state a claim under the Eighth Amendment, Plaintiff must show that Defendants Diaz and Canedo acted with deliberate indifference to a substantial risk of harm to his safety. *Id*. at 834. This requires Defendants to have known of and disregarded an excessive risk to Plaintiff's safety. *Id*. at 837. A failure-to-protect claim may be based on a threat of future harm, *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993), and a prisoner need not wait to be assaulted before obtaining relief. *See Farmer*, 511 U.S. at 845.

Plaintiff alleges sufficient facts to demonstrate that he was actually at risk of being harmed upon his transfer to RJD due to his direct enemy concerns, and that Defendants Diaz and Canedo knew about the risk to his personal safety. However, Plaintiff fails to establish that Defendant Diaz disregarded the risk – in fact, Plaintiff's allegations demonstrate the opposite. According to Plaintiff, Defendant Diaz acknowledged Plaintiff's concerns and notified his supervisor, Defendant Canedo. As such, Plaintiff's fails to state a claim against Defendant Diaz. In contrast, Plaintiff states a plausible claim against Defendant Canedo, who had the ultimate authority over Plaintiff's housing designation. According to Plaintiff, Defendant Canedo knew of Plaintiff's concerns, ignored those concerns, and designated him for housing with his enemies. As a result of the designation, Plaintiff became suicidal and attempted to kill himself rather than be housed on C-yard. Based on these allegations, Plaintiff states a plausible failure-to-protect claim against Defendant Canedo.

---

[7] Prisoners may identify enemies for documentation and inclusion in the prisoner's Central File. *See* Cal. Code Regs., tit. 15 § 3378(b)(2) ("Any offender who claims enemies shall provide sufficient information to positively identify the claimed enemy.").

c) <u>Suicide Prevention Protocols</u>

Plaintiff claims that Defendants Rastegari, Diaz, Canedo, Torres, and Umugbe failed to follow appropriate suicide prevention protocols. Specifically, Plaintiff alleges that Defendants failed to follow the mandated suicide prevention procedures set forth in Title 15 of the California Code of Regulations, section 3365, "Suicide Prevention and Response." However, violations of state prison rules and regulations do not support a claim under section 1983 unless they rise to the level of a constitutional violation. *See Ove v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001); *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997). Moreover, Plaintiff's allegations against Defendants Rastegari, Torres, and Umugbe are more properly considered under the rubric of his Eighth Amendment inadequate medical care claim.

***3. Inadequate Medical Care***

Plaintiff alleges that Defendant Umugbe acted with deliberate indifference to his serious medical needs by failing to treat Plaintiff's eyes subsequent to the pepper spray event and failing to provide adequate psychiatric care.

A determination of deliberate indifference involves a two-step analysis consisting of both objective and subjective inquiries. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "First, the plaintiff must demonstrate a serious medical need such that failure to provide treatment could result in further significant injury or unnecessary and wanton infliction of pain. Second, the plaintiff must show that the defendant's response to the medical need was deliberately indifferent." *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citations and internal quotations omitted). "In order to show deliberate indifference, an inmate must allege sufficient facts to indicate that prison officials acted with a culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 302 (1991).

At the first step, Plaintiff adequately alleges the existence of objectively serious medical needs, including attempted suicide and ocular injury. *See Conn v. City of Reno*, 572 F.3d 1047, 1055 (9th Cir. 2009) (attempted suicide); *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (exposure to pepper spray).

At the second step, Plaintiff fails to allege that Defendant Umugbe was deliberately indifferent to Plaintiff's mental health needs subsequent to Plaintiff's suicide attempt. Dr. Umugbe performed a suicide risk and self-harm evaluation subsequent to Plaintiff's suicide attempt. Plaintiff alleges in a conclusory fashion that Dr. Umugbe failed to make a thorough or reasonable assessment of Plaintiff's mental state. However, Plaintiff also acknowledges that Dr. Umugbe placed Plaintiff in a mental health crisis bed for self-harm and suicidal statements. Such a response to Plaintiff's serious medical need does not demonstrate deliberate indifference.

On the other hand, Plaintiff has alleged sufficient facts to demonstrate that Defendant Umugbe acted with deliberate indifference to the injury Plaintiff suffered as a result of the pepper spray application. According to Plaintiff, Dr. Umugbe observed Plaintiff's condition after being pepper sprayed, and failed to administer any treatment or decontaminate Plaintiff. These allegations are sufficient to demonstrate that Defendant Umugbe was subjectively aware of Plaintiff's serious medical need and failed to adequately respond. *See Farmer*, 511 U.S. at 828; *see also McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) ("A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.") (quotations omitted), overruled on other grounds by *WMX Techs., Inc., v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc). As such, Plaintiff has alleged a plausible violation by Defendant Umugbe of his Eighth Amendment right to adequate medical care based on his failure to decontaminate or otherwise treat Plaintiff's eyes subsequent to the pepper spray application.

***4. Qualified Immunity***

Defendant Umugbe argues that he is entitled to qualified immunity. Government officials enjoy qualified immunity from suit for damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The inquiry is twofold. First, the court must determine whether, taken in the light most favorable to the party

asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), overruled in part by *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Second, the court must determine whether the right was clearly established. *See Saucier*, 533 U.S. at 201.

Under the first step of the inquiry, as discussed above, Plaintiff has sufficiently pleaded facts that could plausibly give rise to a constitutional claim against Defendant Umugbe based on his failure to decontaminate or otherwise treat Plaintiff's eyes. Moving to the second step, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments," but only with respect to "open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Here, it was well-established at the time of the incident that prisoners have a constitutional right to receive adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Accordingly, Defendant Umugbe is not entitled to qualified immunity at this stage of the litigation.

***5. Leave to Amend***

Plaintiff has amended his claims twice already in this action. However, the Court will provide Plaintiff with an opportunity to do so once again with respect to those claims which have not been dismissed with prejudice. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc); *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff chooses to file a Fourth Amended Complaint, he must cure the deficiencies in his claims as identified herein and he may not add any new claims or defendants. *See Iqbal*, 129 S. Ct. at 1948-49. The Court cautions Plaintiff that upon filing, a Fourth Amended Complaint will supersede the Third Amended Complaint. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). "All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." *Id*.

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motions to dismiss. The Court **DISMISSES** Plaintiff's Eighth Amendment excessive force claim and his failure-to-protect claim against Defendants Allison and

Paramo with prejudice. The Court **DISMISSES** Plaintiff's Eighth Amendment failure-to-protect claim against Defendant Diaz without prejudice. The Court **DISMISSES** Plaintiff's Eighth Amendment inadequate medical care claim against Defendant Umugbe, in so far as it arises out of Dr. Umugbe's allegedly inadequate psychiatric care, without prejudice. The Court **GRANTS** Plaintiff leave to file a Fourth Amended Complaint on or before **June 30, 2019**.

**IT IS SO ORDERED**.

DATE: May 7, 2019

HON. MICHAEL M. ANELLO
United States District Judge